UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

ELIJAH FAUCETTE,                    :

                    Plaintiff,      :    13 Civ. 4851 (RJS)(HBP)

    -against-                       :    REPORT AND
                                         RECOMMENDATION
COMMISSIONER OF SOCIAL SECURITY,    :

                    Defendant.      :

-----------------------------------X

          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE RICHARD J. SULLIVAN, United States

District Judge,


I.  Introduction


          Plaintiff Elijah Faucette brings this action pursuant

to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g)

(the "Act"), seeking judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying his

applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI").  The Commissioner has moved

for a judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure (Docket Items 15).  Plaintiff

has cross-moved to remand the case pursuant to the fourth sen-

tence of section 205(g) of the Act, 42 U.S.C. § 405(g) (Docket Item 27).

For the reasons set forth below, I respectfully recommend that the Commissioner's motion for judgment on the pleadings be granted and that plaintiff's cross-motion be denied.

II.   Facts

A.   Procedural Background

Plaintiff filed an application for DIB on April 13, 2011 and an application for SSI on April 14, 2011, alleging he had been disabled since January 1, 2011 (Tr.[1] 87-97).  Plaintiff claimed he was disabled as a result of a large mass behind his right ear, a loss of equilibrium and an unspecified mental condition (Tr. 116).

The Commissioner denied both applications on June 20, 2011 (Tr. 40, 41).  The decision explained that plaintiff had not submitted to a medical examination, despite the Commissioner's request that he do so, and that an examination was necessary in order to fully evaluate plaintiff's condition (Tr. 46, 48). Plaintiff requested a hearing, and Administrative Law Judge

---

[1]"Tr." refers to the administrative record that the Commissioner filed, as required by 42 U.S.C. § 405(g) (Docket Item 10).

("ALJ") Michael Friedman conducted a hearing on January 18, 2012 (Tr. 21-39).  In a decision dated January 27, 2012, the ALJ determined that plaintiff was not disabled (Tr. 8-17).  On June 27, 2013, the Appeals Council denied plaintiff's request for review (Tr. 1-4).  Although plaintiff submitted new evidence to the Appeals Council, the Council determined that it did not provide a basis for rejecting the ALJ's decision because the new evidence post-dated the ALJ's decision (Tr. 2).

On July 11, 2013, plaintiff filed the instant complaint pro se (Docket Item 2).  The Commissioner filed its motion for a judgment on the pleadings on January 21, 2014 (Docket Item 15) and plaintiff, through recently obtained counsel, filed his cross-motion for remand on July 30, 2014 (Docket Item 27).

B.  Plaintiff's Employment
    and Medical Record

Plaintiff was born on April 6, 1984 (Tr. 111).  He completed high school, and has previously worked in fast food restaurants, as a parking lot attendant and with various security companies (Tr. 117, 137).  Plaintiff claimed to have stopped working on December 1, 2010 as a result of a disabling condition (Tr. 116).

The medical evidence in the record dates from October 7, 2006 when plaintiff was hospitalized at the Albany Medical Center on complaints of disorganized thoughts and auditory hallucinations (Tr. 152-53, 158).  Dr. Donald W. Kowalski, a psychiatrist, diagnosed plaintiff with psychotic disorder, not otherwise specified, alcohol abuse and rule out schizophrenia (Tr. 155).  Dr. Kowalski's notes indicate that plaintiff did not suffer from mood-anxiety disturbances (Tr. 155).  Moreover, plaintiff's behavior at the medical center was appropriate (Tr. 160).  Plaintiff was discharged on October 12, 2006 and was instructed to "resume [his] normal activities as tolerated" (Tr. 152).  According to the discharge notice, complications for plaintiff to look for included "increasing voices" and "thoughts on harming self or others" (Tr. 152).

Plaintiff noted on a disability report[2] that he had visited Industrial Medicine Associates in November 2006 and February 2009 for an unspecified "mental condition" and received unidentified medications (Tr. 120).

On April 27, 2011, plaintiff completed a report on his activities of daily living and work history (Tr. 126-44).  He

---

[2]The individual conducting the interview reflected in the disability report, dated April 14, 2011, observed that plaintiff was "incoherent in his answers" (Tr. 113).

indicated on the report that had no difficulties with personal care and could perform them without assistance (Tr. 127-28), could prepare his own meals (Tr. 128), could perform household chores without assistance (Tr. 129), could travel alone using public transportation (Tr. 129), could shop for clothing, food and household products (Tr. 130), could pay his bills, handle a savings account and maintain hobbies and interests (Tr. 130), participated in social activities daily and had no difficulties getting along with family, friends and neighbors (Tr. 131).  He described his ability to perform physical activities as "fair" (Tr. 131-32) and noted that he could pay attention, complete tasks, follow spoken/written instructions, had no difficulties getting along with authority figures and had no memory issues (Tr. 133-34).  He listed his inability to maintain employment as the only effect of his medical conditions (Tr. 127).  With respect to plaintiff's work history, he listed various full-time positions from 2006 to 2009 with security companies, cleaning companies and a restaurant (Tr. 137-43).

On June 20, 2011, Dr. L. Meade, a psychiatrist, attempted to complete a psychiatric review technique form concerning plaintiff.  However, Dr. Meade noted that there was "insufficient evidence" to assess plaintiff's condition, although the

category "schizophrenic, paranoid and other psychotic disorders"
was checked off (Tr. 161).

C.   Testimonial Evidence

       At the hearing on January 18, 2012, plaintiff testified
that he lived with his parents (Tr. 30).  He had worked in 2010
with a security company as a full-time employee until he was laid
off (Tr. 31).  He testified that while the mass behind his right
ear did not affect his ability to work "at all," it made him
nauseated and dizzy; however, he was not taking any medication
and did not have a primary physician (Tr. 29, 31-32).  He further
testified that he suffered from anxiety and depression, and had
visited Industrial Medical Associates once in 2006 and then once
in 2009 (Tr. 32-33; see Tr. 24-26), but had never sought treat-
ment with a psychiatrist or therapist (Tr. 33-34).  He also
stated that he had "no difficulties performing any of [his]
previous employment tasks" (Tr. 35-36).  Plaintiff informed the
ALJ that he was able to use public transportation, cook and clean
on his own and that his hobbies consisted of reading and watching
television.  He described himself as a "severe[] alcoholic" but
noted that he had never been in a treatment program (Tr. 34-35).

       The ALJ advised plaintiff that his file did not contain
recent medical evidence, including any evidence concerning the

6

mass behind plaintiff's right ear or loss of equilibrium (Tr. 23-24, 26, 37).  The ALJ informed plaintiff that he could not render a decision in plaintiff's favor without current medical evidence (Tr. 37).  Throughout the hearing, the ALJ repeatedly advised plaintiff to attend neurological and psychiatric consultative examinations and offered to adjourn the hearing in order to provide plaintiff with additional time to obtain legal representation (Tr. 24-26, 28, 37-38).  Plaintiff explained that he had not sought medical treatment since his hospitalization at the Albany Medical Center because his condition had not "worsen[ed]" (Tr. 29).  Plaintiff also testified that he wanted to proceed with the hearing (Tr. 24-25, 27), that the evidence in his file was sufficient (Tr. 26) and that he would not see "more psychiatrists" (Tr. 36, 38).  Plaintiff directed the ALJ not to schedule the consultative examinations (Tr. 38).

III.  Analysis

   A.  Applicable Legal
       Principles

      1.  Standard of Review

      The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence

or if it is based upon an erroneous legal standard.  42 U.S.C.
§ 405(g); Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008);
Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Tejada v.
Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999); Bubnis v. Apfel, 150
F.3d 177, 181 (2d Cir. 1998).

        The Court first reviews the Commissioner's decision for
compliance with the correct legal standards; only then does it
determine whether the Commissioner's conclusions were supported
by substantial evidence.  Tejada v. Apfel, supra, 167 F.3d at
773-74; Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987);
Ellington v. Astrue, 641 F. Supp. 2d 322, 327-28 (S.D.N.Y. 2009)
(Marrero, D.J.).  "Even if the Commissioner's decision is sup-
ported by substantial evidence, legal error alone can be enough
to overturn the ALJ's decision."  Ellington v. Astrue, supra, 641
F. Supp. 2d at 328; accord Johnson v. Bowen, supra, 817 F.2d at
986.  However, "where application of the correct legal principles
to the record could lead to only one conclusion, there is no need
to require agency reconsideration."  Johnson v. Bowen, supra, 817
F.2d at 986.

        "'Substantial evidence' is 'more than a mere scintilla.
It means such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion.'"  Talavera v. Astrue, 697
F.3d 145, 151 (2d Cir. 2012), quoting Richardson v. Perales, 402

U.S. 389, 401 (1971).  "Consequently, where [there is] substantial evidence . . . this Court may not substitute its own judgment as to the facts, even if a different result could have been justifiably reached upon de novo review."  Beres v. Chater, 93 Civ. 5279 (JG), 1996 WL 1088924 at *5 (E.D.N.Y. May 22, 1996); see Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).  Thus, "'[t]o determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" Terwilliger v. Comm'r of Soc. Sec., No. 3:06-CV-0149 (FJS/GHL), 2009 WL 2611267 at *2 (N.D.N.Y. Aug. 24, 2009), quoting Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

A remand is appropriate "'[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard.'"  Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996), quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980) and Hankerson v. Harris, 636 F.2d 893, 896 (2d Cir. 1980).  "Reversal and entry of judgment for the claimant is appropriate only 'when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.'" Cruz ex rel. Vega v. Barnhart, 04 Civ. 9794 (DLC), 2005 WL

2010152 at *8 (S.D.N.Y. Aug. 23, 2005) (Cote, D.J.), modified on
other grounds on reconsideration, 2006 WL 547681 (S.D.N.Y. Mar.
7, 2006), quoting Parker v. Harris, supra, 626 F.2d at 235;
accord Rivera v. Sullivan, 923 F.2d 964, 970 (2d Cir. 1991);
Babcock v. Barnhart, 412 F. Supp. 2d 274, 284 (W.D.N.Y. 2006);
Buonviaggio v. Barnhart, 04 Civ. 357 (JG), 2005 WL 3388606 at *5
(E.D.N.Y. Dec. 2, 2005); Rivera v. Barnhart, 379 F. Supp. 2d 599,
604 (S.D.N.Y. 2005) (Marrero, D.J.); see 42 U.S.C. § 405(g) ("The
[district] court shall have power to enter, upon the pleadings
and transcript of the record, a judgment affirming, modifying, or
reversing the decision of the Commissioner of Social Security,
with or without remanding the cause for a rehearing.").

    2. Determination of
      Disability

  A claimant is entitled to disability benefits if he or
she can establish an "inability to engage in any substantial
gainful activity by reason of any medically determinable physical
or mental impairment . . . which has lasted or can be expected to
last for a continuous period of not less than 12 months."  42
U.S.C. § 423(d)(1)(A); see also Barnhart v. Walton, 535 U.S. 212,
217-22 (2002) (both impairment and inability to work must last

twelve months).  The impairment must be demonstrated by "medi-
cally acceptable clinical or laboratory diagnostic techniques,"
42 U.S.C. § 423(d)(5)(A), and it must be

> of such severity that [the claimant] is not only unable
> to do [the claimant's] previous work but cannot, con-
> sidering [the claimant's] age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate
> area in which [the claimant] lives, or whether a spe-
> cific job vacancy exists for [the claimant], or whether
> [the claimant] would be hired if [the claimant] applied
> for work.

42 U.S.C. § 423(d)(2)(A).

The Commissioner must consider both objective and
subjective factors when assessing a disability claim, including:
(1) objective medical facts and clinical findings; (2) diagnoses
and medical opinions of examining physicians; (3) subjective
evidence of pain and disability to which the claimant and family
or others testify and (4) the claimant's educational background,
age and work experience.  Brown v. Apfel, 174 F.3d 59, 62 (2d
Cir. 1999) (per curiam); DiPalma v. Colvin, 951 F. Supp. 2d 555,
565 (S.D.N.Y. 2013) (Peck, M.J.).

"In evaluating disability claims, the [Commissioner] is
required to use a five-step sequence, promulgated in 20 C.F.R.
§§ 404.1520, 416.920."  Bush v. Shalala, 94 F.3d 40, 44 (2d Cir.
1996).

First, the Commissioner considers whether the claimant
is currently engaged in substantial gainful activity.
Where . . . the claimant is not so engaged, the Commis-
sioner next considers whether the claimant has a "se-
vere impairment" that significantly limits his physical
or mental ability to do basic work activities . . . .
Where the claimant does suffer a severe impairment, the
third inquiry is whether, based solely on medical
evidence, he has an impairment listed in Appendix 1 of
the regulations or equal to an impairment listed there
. . . .  If a claimant has a listed impairment, the
Commissioner considers him disabled.  Where a claimant
does not have a listed impairment, the fourth inquiry
is whether, despite his severe impairment, the claimant
has the residual functional capacity to perform his
past work . . . .  Finally, where the claimant is
unable to perform his past work, the Commissioner then
determines whether there is other work which the claim-
ant could perform.

Balsamo v. Chater, 142 F.3d 75, 79-80 (2d Cir. 1998); see also

Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Butts v. Barnhart,

388 F.3d 377, 383 (2d Cir. 2004), amended in part on other

grounds on rehearing, 416 F.3d 101 (2d Cir. 2005).

        In addition to the five-step analysis outlined
[above], the Commissioner has promulgated additional
regulations governing evaluations of the severity of
mental impairments.  20 C.F.R. § 404.1520a.  These
regulations require application of a "special tech-
nique" at the second and third steps of the five-step
framework, Schmidt v. Astrue, 496 F.3d 833, 844 n. 4
(7th Cir. 2007), and at each level of administrative
review.  20 C.F.R. § 404.1520a(a).  This technique
requires the reviewing authority to determine first
whether the claimant has a "medically determinable
mental impairment."  § 404.1520a(b)(1).  If the claim-
ant is found to have such an impairment, the reviewing
authority must "rate the degree of functional limita-
tion resulting from the impairment(s) in accordance
with paragraph (c)," § 404.1520a(b)(2), which specifies
four broad functional areas:  (1) activities of daily

> living; (2) social functioning; (3) concentration,
> persistence, or pace; and (4) episodes of decompensa-
> tion.  § 404.1520a(c)(3).  According to the regula-
> tions, if the degree of limitation in each of the first
> three areas is rated "mild" or better, and no episodes
> of decompensation are identified, then the reviewing
> authority generally will conclude that the claimant's
> mental impairment is not "severe" and will deny bene-
> fits.  § 404.1520a(d)(1).

Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir. 2008) (footnote
omitted).

At step two, a "'severe' impairment is one that signif-
icantly limits an individual's physical or mental ability to do
basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c)."
Meadors v. Astrue, 370 F. App'x 179, 182 (2d Cir. 2010).  "Basic
work activities" is defined as "the abilities and aptitudes
necessary to do most jobs."  20 C.F.R. §§ 404.1521(b),
416.921(b).

> An impairment or combination of impairments is found
> "not severe" and a finding of "not disabled" is made at
> this step when medical evidence establishes only a
> slight abnormality or a combination of slight abnormal-
> ities which would have no more than a minimal effect on
> an individual's ability to work even if the individ-
> ual's age, education, or work experience were specifi-
> cally considered (i.e., the person's impairment(s) has
> no more than a minimal effect on his or her physical or
> mental ability(ies) to perform basic work activities).
>
> *      *      *
>
> A claim may be denied at step two only if the evidence
> shows that the individual's impairments, when consid-
> ered in combination, are not medically severe, i.e., do
> not have more than a minimal effect on the person's

> physical or mental ability(ies) to perform basic work
> activities.  If such a finding is not clearly estab-
> lished by medical evidence, however, adjudication must
> continue through the sequential evaluation process.

Social Security Ruling ("SSR") 85-28, <u>available</u> <u>at</u> 1985 WL 56856 at *3 (1985).  The Second Circuit has cautioned that "the standard for a finding of severity under Step Two of the sequential analysis is <u>de</u> <u>minimis</u> and is intended only to screen out the very weakest cases." <u>McIntyre v. Colvin</u>, No. 13-2886, --- F.3d ---, 2014 WL 3030378 at *3 (2d Cir. July 7, 2014), <u>citing</u> <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir. 1995).

The claimant bears the initial burden of proving disability with respect to the first four steps.  <u>Burgess v. Astrue</u>, <u>supra</u>, 537 F.3d at 128; <u>Balsamo v. Chater</u>, <u>supra</u>, 142 F.3d at 80.

### 3.  Development
###     of the Record

"It is the rule in the [Second] [C]ircuit that 'the ALJ, unlike a judge in a trial, must [him]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'" <u>Pratts v. Chater</u>, <u>supra</u>, 94 F.3d at 3, <u>quoting</u> <u>Echevarria v. Sec'y of Health & Human Servs.</u>, 685 F.2d 751, 755 (2d Cir. 1982).

> Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982).  This duty exists even when the claimant is represented by counsel . . . .  The [Commissioner's] regulations describe this duty by stating that, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 416.912(d).

Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); see Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) ("We have stated many times that the ALJ generally has an affirmative obligation to develop the administrative record . . . .") (inner quotations and citation omitted); Shaw v. Chater, supra, 221 F.3d at 131 ("The ALJ has an obligation to develop the record in light of the nonadversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel."); Tejada v. Apfel, supra, 167 F.3d at 774 (same); Van Dien v. Barnhart, 04 Civ. 7259 (PKC), 2006 WL 785281 at *14 (S.D.N.Y. Mar. 24, 2006) (Castel, D.J.) (same); Molina v. Barnhart, 04 Civ. 3201 (GEL), 2005 WL 2035959 at *6 (S.D.N.Y. Aug. 17, 2005) (Lynch, D.J.) (same).

Notwithstanding the foregoing, if a claimant refuses to provide necessary evidence or does not state a good reason for refusing to take part in a consultative examination, a finding

15

that the claimant is not disabled may be made.  20 C.F.R. §§
404.1516, 404.1518(a); see Antoniou v. Astrue, 10-CV-1234 (KAM),
2011 WL 4529657 at *16 (E.D.N.Y. Sept. 27, 2011).  Examples of
"good reasons" for failing to appear include illness on the date
of the scheduled examination, failure to receive timely notice or
any notice, incomplete information regarding the time/place of
the examination or death or serious illness in the claimant's
immediate family.  20 C.F.R. § 404.1518(b).

     Where the ALJ has failed to develop the record ade-
quately, remand to the Commissioner for further development is
appropriate.  See Pratts v. Chater, supra, 94 F.3d at 39.

     B.   The ALJ's
          Decision

          The ALJ first noted that plaintiff met the disability
insured status requirements through December 31, 2015[3] (Tr. 13).
The ALJ then proceeded to apply the five-step analysis described
above and determined at step two that plaintiff was not disabled
(Tr. 13-17).  At step one, the ALJ found that plaintiff had not
engaged in substantial gainful activity since January 1, 2011,
the alleged onset date (Tr. 13).  At step two, the ALJ concluded

---

     [3]Plaintiff had acquired sufficient quarters of coverage to
remain insured through December 31, 2015 (Tr. 11).

that plaintiff was not disabled because he did not have an
impairment or combination of impairments that was "severe" (Tr.
13).  Specifically, the ALJ determined that, although plaintiff
suffered from schizophrenic, paranoid and other psychotic disor-
ders, the impairments had not significantly limited plaintiff's
ability to perform basic work-related activities (Tr. 13).

     The ALJ considered plaintiff's educational and employ-
ment background as well as the medical record (Tr. 14).  The ALJ
determined that while plaintiff's impairments could be expected
to cause the symptoms he claimed to some degree, his statements
regarding the intensity, persistence and limiting effects of
these symptoms were not credible to the extent that they were
inconsistent with the assessment that plaintiff's impairments
were not severe (Tr. 15).

     At the outset of his decision, the ALJ noted that the
medical record contained "very little evidence" that pertained to
the period before January 1, 2011 (Tr. 15).  The ALJ summarized
the only records from that time period, which consisted of
plaintiff's hospitalization at the Albany Medical Center in
October 2006 for psychosis, alcohol abuse and schizophrenia (Tr.
15).  The ALJ noted that the medical record did not substantiate
plaintiff's testimony regarding his visit to Industrial Medical
Associates (Tr. 15).  Moreover, although plaintiff complained of

a mass behind his right ear and loss of equilibrium, he had not
sought treatment for those alleged impairments; plaintiff had
also conceded that the mass behind his right ear did not affect
his ability to work, although he testified that the resulting
dizziness and nausea did (Tr. 15).  The ALJ noted that plaintiff
had "not generally received the type of medical treatment one
would expect for a very disabled individual" (Tr. 15).

In addition, the ALJ found that plaintiff's self-
described daily activities were inconsistent with his claim of a
disabling condition (Tr. 15).  Plaintiff had acknowledged that he
did not have limitations on his ability to perform the activities
of daily living; he had also testified that he did not have
problems performing his past jobs (Tr. 15).  Specifically,
plaintiff was able to sit, walk, stand, shop, cook, clean, and
use public transportation without any difficulties (Tr. 15).
Although plaintiff described himself as a severe alcoholic, he
testified that he had never been treated for it (Tr. 15).

With respect to the time period from January 1, 2011
onward, the ALJ found that the record failed to establish any of
the physical or mental impairments of which plaintiff complained
(Tr. 15).  Plaintiff did not seek or receive any physical or
mental treatment during the relevant time period (Tr. 15).
Plaintiff had explained that he did not seek treatment because

18

his condition had not worsened (Tr. 14).  Plaintiff had refused

to attend a consultative examination and testified that he did

not plan to see a psychiatrist unless it was mandatory (Tr. 14-

15).  The ALJ opined that, although "claimant's refusal to see

doctors could be a symptom of a mental illness," the record, as

it stood, did not establish the existence of a severe impairment

(Tr. 16).

Finally, the ALJ evaluated the severity of plaintiff's

mental disorders by considering the four functional limitations

set forth in Section 12.00C of the Listing of Impairments, 20

C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16).

As to the first functional area, activities of daily

living, the ALJ found that the record did not support a finding

of any limitation in this area (Tr. 16).  Specifically, the ALJ

noted that plaintiff had completed a report on his activities of

daily living, in which he had indicated that he was able to

clean, complete household chores, attend to his own personal

care, pay bills, count change, handle a savings account and shop

for food and clothing (Tr. 16).  Plaintiff had also testified

that he could sit, walk, stand, use public transportation, shop,

cook and clean without any difficulties and described his hobbies

as reading and watching television (Tr. 16).

The ALJ next analyzed plaintiff's social functioning and determined that he had no limitation in this area as well (Tr. 16).  Plaintiff had reported that he goes out daily using public transportation, spends time with others and does not have difficulties getting along with others (Tr. 16).

With respect to the third functional area of concentration, persistence or pace, the ALJ found no limitation (Tr. 16). The ALJ noted that plaintiff stated he did not need assistance with his personal care or medications and could pay bills, count change and handle a savings account (Tr. 16).  Moreover, plaintiff had denied having problems paying attention or following spoken and written instructions (Tr. 16).  Plaintiff had further testified that he enjoys reading, an activity which the ALJ observed requires some degree of concentration (Tr. 16).

For the final functional area, the ALJ concluded that plaintiff had experienced no episodes of decompensation of extended duration (Tr. 17).  The ALJ found that the record did not reveal "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning" (Tr. 17). Nor was there "evidence of significant alteration in medication or documentation of the need for a more structured psychological support system (hospitalizations, for example) in order to stabilize the claimant" (Tr. 17).

In sum, because plaintiff's medically determinable mental impairments caused no more than mild limitations with respect to the first three functional areas and no episodes of decompensation that had been of extended duration, the ALJ found that the impairments, alone or in combination, were not severe (Tr. 17).

Accordingly, the ALJ concluded that plaintiff was not disabled from January 1, 2011 through the date of his decision (Tr. 17).

C.  Analysis of the
    ALJ's Decision

The Commissioner argues that the ALJ applied the correct legal standards and that the record supports his findings (Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings, dated January 21, 2014 ("Comm'r Mem.") (Docket Item 17), at 8-11).  The Commissioner further argues that plaintiff failed to meet his burden to furnish the evidence necessary to establish his disabling condition and that plain-tiff's refusal to attend consultative examinations without an explanation or good reasons thwarted the ALJ's attempt to develop the record (Comm'r Mem. at 11).

Plaintiff contends that the Commissioner's decision should be remanded because (1) the ALJ erred at step two of his analysis in applying incorrect legal standards and failing to properly assess the evidence in the record; (2) the ALJ failed to develop the record, and (3) the Appeals Council erred in failing to consider new evidence that plaintiff submitted (Memorandum of Law in Support of Plaintiff's Cross Motion to Remand, dated July 30, 2014 ("Pl. Mem.") (Docket Item 28)).

>  1.  Whether the ALJ Erred at
>      the Second Step of the
>      <u>Sequential Evaluation</u>

Plaintiff contends that the ALJ erred at step two of his analysis because he failed to (1) apply the correct legal standards, (2) assess all of the evidence in the record, including contradictory medical evidence and (3) properly evaluate the lack of medical evidence in the record (Pl. Mem. at 1-3, 7-11, 17-24).  Plaintiff also argues that the Commissioner's attempt to focus on plaintiff's refusal to attend consultative examinations is improper because the ALJ reached his decision based on the merits of the case and not plaintiff's failure to cooperate (Pl. Mem. at 4-5).

I find that the ALJ applied the correct legal standards and that his finding at step two of his analysis is supported by

substantial evidence.  Plaintiff alleged that he was disabled due to a mass behind his right ear, loss of equilibrium and an unspecified mental disorder (Tr. 116).  The ALJ appropriately considered the fact that there was no medical evidence in the record that substantiated plaintiff's allegation of a mass behind his right ear or loss of equilibrium.  Contrary to plaintiff's contention, the ALJ was permitted to rely on the absence of evidence in the record.  See Britt v. Astrue, 486 F. App'x 161, 163 (2d Cir. 2012) (affirming ALJ's step two determination because the claimant "did not furnish the ALJ with any medical evidence showing how these alleged impairments limited his ability to work").  The fact that plaintiff did not seek treat-ment for the mass behind his right ear and loss of equilibrium is clearly relevant to the inquiry of whether the physical impair-ments were disabling.  Furthermore, as discussed in greater detail below at pages 28 to 31, the Commissioner provided plain-tiff with opportunities to undergo neurological (and psychiatric) consultative examinations in order to obtain current medical evidence, but plaintiff repeatedly refused to attend them without offering any reason (Tr. 36, 38).[4]

---

[4]Plaintiff's argument that the court should not consider plaintiff's non-compliance in its analysis is plainly meritless. The Regulations explicitly permit the Commissioner to consider a

(continued...)

With respect to plaintiff's alleged mental impairment, the ALJ determined that although plaintiff had a medically determinable mental impairment, it was not severe.  The ALJ observed that the only medical evidence in the record -- plaintiff's brief hospitalization at the Albany Medical Center in 2006, during which he was diagnosed with psychotic disorder, not otherwise specified, and rule out schizophrenia -- pre-dated the relevant time period by many years (Tr. 155).  "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs."  SSR 85-28, <u>available</u> <u>at</u> 1985 WL 56856 at *3.  Here, plaintiff testified that his condition had not "worsen[ed]" since 2006 (Tr. 29) and that he had worked for profit from 2006 to 2010 in a fast food restaurant, with a cleaning company and a security company (<u>see</u> Tr. 30-31, 117, 137).  It was, thus, reasonable for the ALJ to infer that, following his hospitalization in 2006, plaintiff's mental impairment was not so severe that it limited his ability to perform basic work activities.  <u>See</u> <u>Reynolds v. Colvin</u>, --- F. App'x ---, 2014 WL 2782043 at *1 (2d Cir. June 20, 2014) ("it is undisputed that in the

---

[4](...continued)
claimant's refusal to provide necessary evidence or undergo consultative examinations without good reason in rendering a decision.  20 C.F.R. §§ 404.1516, 404.1518(a).

interim, [plaintiff] worked at substantial gainful activity, a circumstance making it difficult to infer severe impairment from the earlier records").

Moreover, the ALJ correctly evaluated the severity of plaintiff's mental impairment by considering the four broad functional areas set forth in Section 12.00C of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ's finding that plaintiff's degree of limitation in each of the first three areas was "mild" or better and that plaintiff had no episodes of decompensation of extended duration is supported by substantial evidence. The ALJ considered the fact that plaintiff had testified that he did not have limitations in his ability to perform routine activities of daily living, that the mass behind his right ear did not affect his ability to work "at all" and that he did not take medication for the loss of equilibrium (Tr. 31, 32, 34). The ALJ also considered a report, dated April 27, 2011, in which plaintiff noted that he had no difficulties or limitations in performing activities of daily living, using public transportation to travel, shopping for essentials, handling bills and a savings account, participating in social activities, getting along with others, following instructions, completing tasks, paying attention and performing physical activities (Tr. 126-44). Indeed, during his hearing, plaintiff

25

failed to allege any symptoms regarding pain or functional limitations as a result of his alleged impairments.  While he testified that he was depressed and anxious, he had not been to a psychiatrist or a therapist for treatment (Tr. 32-34).  Based on the foregoing, the ALJ's assessment is supported by substantial evidence.  See Kohler v. Astrue, supra, 546 F.3d at 265-66.

Plaintiff argues that the ALJ erred in failing to consider evidence from psychiatrist Dr. Meade and a staff member of the Social Security Administration ("SSA") (Pl. Mem. at 7-11). However, neither has any bearing on the correctness of the ALJ's conclusion that plaintiff failed to meet his burden at step two. Dr. Meade made no determination concerning the severity of plaintiff's medical dispositions, finding there was "insufficient evidence" to make any assessment (Tr. 161); hence, Dr. Meade indicated that plaintiff's "capability" was "unresolved" (Tr. 40, 41).  Further, although an SSA employee remarked that plaintiff appeared "incoherent" during an interview (Tr. 113), that state- ment has no bearing on whether plaintiff's mental impairment is sufficiently severe to meet his burden.

Plaintiff further contends that the ALJ should have proceeded to step three of the analysis because the ALJ was unable to "determine clearly" whether plaintiff could perform basic work activities (Tr. 1-4).  Assuming, without deciding,

that the ALJ erred in ending the analysis at step two, this error was harmless because plaintiff would not have been able to meet his burden at step four of the sequential evaluation process. During the hearing before the ALJ, plaintiff testified that he had "no problems, no difficulties performing any of [his] previous employment tasks" (Tr. 35-36).  In light of plaintiff's testimony and the weak medical evidence in the record, the ALJ would have determined that plaintiff had the residual functional capacity to perform the requirements of his past relevant work and was, thus, not disabled.

Accordingly, the ALJ applied the correct legal standard in finding that plaintiff's disability claim fell below the de minimis standard and his determination that the impairments were not severe is supported by substantial evidence.[5]

---

[5]Plaintiff argues that the ALJ improperly relied on plaintiff's hearing testimony in order to determine the severity of his impairments (Tr. 21-22, citing Navarro v. Colvin, No. 11-CV-03355 (MSK), 2013 WL 181758 at *4 (D. Colo. May 5, 2013)).  If this was an error, it was clearly harmless because the medical record alone does not establish that plaintiff had a severe impairment or combination of impairments during the relevant time period.

2.   Whether the ALJ Failed
     to Develop the Record

    Plaintiff argues that the ALJ failed to develop the

record because he did not schedule consultative examinations and

failed to make further inquiries during the hearing regarding

plaintiff's last employment (Pl. Mem. at 11-17).  These arguments

are unavailing.

    The record makes clear that any attempt by the ALJ to

schedule a consultative examination would have been fruitless and

that despite being advised of the consequences of his failure to

attend, plaintiff was adamant in his refusal to attend such

examinations.[6]  See Walker v. Barnhart, 172 F. App'x 423, 428 (3d

Cir. 2006) (affirming Commissioner's denial where the ALJ found

that the claimant had repeatedly failed to cooperate with the

SSA's attempt to obtain a consultative examination and "concluded

that there was no reason to believe that he would be more cooper-

ative in the future"); accord Kratochvil v. Comm'r of Social

Sec., No. 1:06-CV-1535 (LEK/VEB), 2009 WL 1405226 at *5 (N.D.N.Y.

May 18, 2009).  The hearing transcript shows that the ALJ

---

    [6]Plaintiff's claim that the ALJ's decision contradicts the
statements he made during the hearing fails (Pl. Mem. at 5-7).
As noted here, the ALJ did not schedule the consultative examina-
tions, despite advising plaintiff of their necessary, because
plaintiff testified that he would not attend (Tr. 38).

stressed the need for current medical evidence and that, despite
the ALJ's persistent attempts to discuss this requirement,
plaintiff continued to refuse to comply without providing any
explanation:

     ALJ:     . . . I really think you should be examined
                   by Social Security doctors. . . .

                         *   *   *

     ALJ:     . . . I'm also going to send you out for
                   medical examinations but --

     CLMT:    No.  I don't want -- I have enough evidence.
                   I have enough substantial evidence for me to
                   receive a favorable decision.

     ALJ:     Mr. Faucette, I don't think you do.  I don't
                   have anything here.  The only medical evi-
                   dence I have goes back six years from that
                   Albany facility.

                         *   *   *

     ALJ:     . . . Look, when I send them to the neurolo-
                   gist and the psychiatrist, particularly the
                   psychiatrist, tell the psychiatrist whatever
                   problems you think you have.  <u>That's</u> <u>very</u>
                   <u>important</u>.  Okay?

     CLMT:    I have done so already and I don't plan to
                   see any more psychiatrists.

                         *   *   *

     ALJ:     . . . Mr. Faucette, . . . I'm going to set up
                   the examinations --

     CLMT:    I won't appear at any of your -- of any of
                   your shenanigans.

                         *   *   *

```
CLMT:        . . . Don't send me no scheduled appointments
             anywhere to my address. . . .  Just render
             your decision[.]
```

(Tr. 26; 36-38 (emphasis added); see also Tr. 23 (informing plaintiff that he has no recent medical evidence), 28 (advising plaintiff to attend a consultative examination) and 30 (same)). Nor has plaintiff offered a good reason for his refusal in his present motion.  See 20 C.F.R. § 404.1518(b).

Plaintiff fails to even acknowledge the SSA's previous attempts to advise plaintiff of the need for recent medical evidence and to secure consultative examinations (Tr. 40, 41). The Commissioner's written explanation of her denial of plaintiff's applications states that plaintiff had failed to take part in a medical examination, though one had been requested, and that an examination was necessary to evaluate his condition (Tr. 46, 48).  The SSA had reached out to plaintiff several times and had advised him that a consultative examination was necessary because "the evidence in [his] file [was] insufficient to evaluate the severity of [his] impairment" before issuing its denial of his applications (Tr. 20).

"Given [plaintiff's] . . . lack of cooperation with regard to the development of the record, [p]laintiff cannot now prevail based upon a challenge to the adequacy of that record." Kratochvil v. Comm'r of Social Sec., supra, 2009 WL 1405226 at

*5; see Stephens v. Astrue, No. 6:08-CV-0400 (GHL), 2009 WL
1813258 at *8 (N.D.N.Y. June 24, 2009); see also Irizarry v.
Astrue, No. 5:09-cv-1370 (GLS/DRH), 2012 WL 177969 at *1-*2
(N.D.N.Y. Jan. 23, 2012); Coty v. Sullivan, 793 F. Supp. 83, 86
(S.D.N.Y. 1992) (Sprizzo, D.J.).

      Likewise, plaintiff's argument that the ALJ should have
probed further regarding the circumstances surrounding his last
employment fails.  The ALJ sufficiently questioned plaintiff on
this subject.  Specifically, the ALJ inquired about the timing,
duration and nature of his last job, whether it was full-time or
part-time employment, and why he had stopped working there (Tr.
30-31).  Plaintiff does not even allege that further questioning
on this subject would have affected the ALJ's decision; nor is
there any reason to believe that it would have.

      Accordingly, I find that the ALJ satisfied his obliga-
tion to develop the record.

      3.  Whether the Appeals Council
          Erred in Failing to
          Consider New Evidence

      Finally, plaintiff argues that the Appeals Council
failed to incorporate new evidence into the record (Pl. Mem. at
24-26).  In Perez v. Chater, supra, 77 F.3d at 45, the Second
Circuit held that

> new evidence submitted to the Appeals Council following
> the ALJ's decision becomes part of the administrative
> record for judicial review when the Appeals Council
> denies review of the ALJ's decision.  In promulgating
> § 404.970(b) and § 416.1470(b), the Secretary expressly
> authorized claimants to submit new evidence to the
> Appeals Council without a "good cause" requirement.
> Cf. 42 U.S.C. § 405(g) (stating that the district court
> may order additional evidence to be taken before the
> Secretary, but only upon a showing "that there is good
> cause for the failure to incorporate such evidence into
> the record in a prior proceeding").  The only limita-
> tions stated in these rules are that the evidence must
> be new and material and that it must relate to the
> period on or before the ALJ's decision.

(emphasis added).  Here, plaintiff submitted records from St.

Barnabas, dated July 13, 2012 and Harlem Hospital, dated May 13,

2012 (Tr. 2).  Because the new evidence post-dated the ALJ's

decision, the Appeals Council did not commit any error.

        Notwithstanding, plaintiff is free to file a new

application for DIB and SSI for the period following the ALJ's

decision and may present new evidence of his disability at that

time.  Plaintiff is strongly encouraged to do so, with counsel's

assistance.[7]

---

        [7]I have not overlooked the fact that the transcript of
plaintiff's hearing before the ALJ appears to suggest that
plaintiff may have some psychological issues.  Even if plaintiff
does suffer from such issues, I cannot conclude from that fact
alone that plaintiff is disabled.  Like issues of physical
health, mental health issues may or may not be disabling, and
disability cannot be presumed from the mere presence of such
issues.  I sincerely hope that plaintiff will re-apply for
benefits, assisted by counsel, and will cooperate in the develop-
                                              (continued...)

IV.  <u>Conclusion</u>

For the reasons set forth above, I respectfully recommend that the Commissioner's motion for judgment on the pleadings be granted and that plaintiff's motion for remand be denied.

V.  <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Richard J. Sullivan, United States District Judge, 40 Foley Square, Room 2104, New York, New York 10007 and to the Chambers

---

[7](...continued)
ment of a complete medical record.  If plaintiff's current counsel is unable to represent him with respect to any re-application for benefits, plaintiff may want to consider contacting the Center for Disability Advocacy Rights, Inc. at the address listed below.  That organization may be willing to provide assistance to plaintiff free of charge.

Christopher J. Bowes, Esq.
Center for Disability Advocacy Rights (CeDAR), Inc.
100 Lafayette Street, Suite 304
New York, New York 10013
Tel. (212) 979-7575
Fax (212) 979-8778

of the undersigned, 500 Pearl Street, Room 750, New York, New

York 10007.  Any requests for an extension of time for filing

objections must be directed to Judge Sullivan.  FAILURE TO OBJECT

WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS

AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140,

155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d

Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049,

1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.

1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
         August 8, 2014

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Laurence Beck, Esq.
Apt. 1A
482 E. 9th Street
Brooklyn, New York   11218

Fergus Kaiser, Esq.
Special Assistant United States Attorney
Southern District of New York
c/o Social Security Administration
Room 3904
26 Federal Plaza
New York, New York   10278