UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIJAH FAUCETTE,

                            Plaintiff,

        -v-                                                            No. 13-cv-4851 (RJS) (HBP)
                                                                      ORDER ADOPTING
COMMISSIONER OF SOCIAL SECURITY,                   REPORT AND RECOMMENDATION

                            Defendant.

RICHARD J. SULLIVAN, District Judge:

        Plaintiff Elijah Faucette seeks judicial review of the final decision of the Social Security

Commissioner ("Commissioner" or "Defendant") denying Plaintiff's application for disability

insurance benefits and supplemental security income under the Social Security Act.  (Doc. No. 2.)

Now before the Court is the Report and Recommendation (the "Report") of the Honorable Henry

Pitman, Magistrate Judge, recommending that Defendant's motion for judgment on the pleadings

be granted and that Plaintiff's cross-motion to remand the case be denied.  (Doc. No. 31.)  For the

reasons set forth below, the Court adopts the Report in substantial part and grants Defendant's

motion for judgment on the pleadings.

## I. LEGAL STANDARDS

### A.  Disability Benefits Claims

        Under the Social Security Act, a claimant is deemed "disabled" – and thus entitled to

disability benefits – if he demonstrates an "inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which has lasted or can be expected

to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505(a), 416.905(a).

Establishing the mere presence of an impairment is not sufficient for a finding of disability under

the Act.  *See* 42 U.S.C. § 423(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  A claimant bears the burden of persuasion of showing that the impairment "has resulted in functional limitations that prevent him from engaging in any substantial gainful activity."  *Gracia v. Apfel*, No. 97-cv-4035 (SAS), 1998 WL 599714, at *4 (S.D.N.Y. Sept. 10, 1998) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).  In evaluating disability claims, the Commissioner must apply a five-step sequential analysis, which the Second Circuit has summarized as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998) (citations omitted).  A claimant bears the burden of proving the first four steps of the analysis, but the Commissioner bears the burden at the final step.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012).

### B.  Judicial Review

A district court may not disturb an ALJ's decision if it is based on correct legal principles and supported by substantial evidence.  *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).  The Social Security Act provides that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If a court finds that there is substantial evidence supporting the

Commissioner's decision, the decision must be upheld, even if there is also substantial evidence supporting the plaintiff's position. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). Thus, "the existence of contrary evidence does not suffice to find in favor of Plaintiff if substantial evidence otherwise supports the ALJ's findings." *Rodriguez v. Colvin*, No. 12-cv-3931 (RJS) (RLE), 2014 WL 5038410, at *3 (S.D.N.Y. Sept. 29, 2014) (citing *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)). A court may reject a finding only if "a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (citation omitted).

Within this context, the term "substantial evidence" has been defined as "more than a mere scintilla" and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). The substantial evidence standard "applies not only to basic evidentiary fact-finding but extends to inferences and conclusions drawn from such facts." *Gracia*, 1998 WL 599714, at *4 (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)). Therefore, the Commissioner's "findings of fact, and the inferences and conclusions drawn from those findings, are conclusive where a reviewing court's independent analysis of the evidence may differ from the Commissioner's analysis." *Id.* (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)).

C.  Review of Report and Recommendation

The district court "may accept, reject, or modify, in whole or in part, the [magistrate judge's] findings or recommendations." 28 U.S.C. § 636(b)(1). If a party "properly objects" to – that is, raises objections that are "clearly aimed at particular findings in" – the magistrate judge's report, the district court reviews those findings *de novo*. *See Rodriguez*, 2014 WL 5038410, at *3 (citations omitted); *see also McDonough v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009). Conversely, if the objections are improper – including because they are "conclusory," "general," or "simply rehash or reiterate the original briefs to the magistrate judge," *Rodriguez*, 2014 WL

5038410, at *3 – that "will not suffice to invoke *de novo* review of the magistrate's recommendations," and the district court will review the magistrate's report only for clear error, *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citation omitted). "In clear error review, the Court should reverse a finding only if it is 'left with the definite and firm conviction that a mistake has been committed,' and not merely if it 'would have decided the case differently.'" *Rodriguez*, 2014 WL 5038410, at *4 (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)).

## II.  DISCUSSION

The majority of Plaintiff's objections are aimed at the ALJ's (as opposed to the Report's) findings, and repeat nearly verbatim the arguments that Plaintiff made in his original brief – arguments that Judge Pitman considered and rejected in his Report.  (*Compare* Doc. No. 28 (Plaintiff's moving brief), *with* Doc. No. 38 (Plaintiff's objections).)  Since these objections are "improper," they are reviewed only for clear error.   In general, Plaintiff challenges the administrative findings with respect to the ALJ's (1) step-two severity determination; and (2) duty to develop the administrative record.  The Court will first address these overarching objections and then turn to Plaintiff's remaining objections.

With respect to the first broad objection, Plaintiff specifically challenges (a) the ALJ's failure to consider two pieces of evidence in the record – an incomplete "Psychiatric Review Technique" form signed by an agency (non-treating) psychiatrist, Dr. L. Meade, and a Social Security Administration ("SSA") employee's remark that Plaintiff's answers in an interview were "incoherent" (*see* Doc. No. 31 at 26; Doc. No. 38 at 4); (b) the ALJ's alleged error "in inferring from the *lack* of medical treatment that Plaintiff had no limits as a result of his psychiatric condition" (Doc. No. 38 at 18–19 (emphasis added)); (c) the ALJ's reliance on non-medical evidence in finding that Plaintiff did not have a "severe impairment(s)" (*id.* at 22–23); and (d) the

4

ALJ's misapprehension of the required legal standard at step two, given his use of the word "disabled" in his analysis (*id.* at 22).

The Court finds that Judge Pitman's thorough and carefully considered thirty-four page Report was not clearly erroneous in recommending that the Court affirm the ALJ's findings with respect to the step-two analysis. Specifically, Judge Pitman explained, among other things, that it was "reasonable for the ALJ to infer that, following his hospitalization in 2006, [P]laintiff's mental impairment was not so severe that it limited his ability to perform basic work activities," given that the only medical evidence presented by Plaintiff was for the 2006 hospitalization – years before the relevant period for which Plaintiff sought disability benefits – and that Plaintiff had "testified that his condition had not 'worsen[ed]' since 2006 . . . and that he had worked for profit from 2006 to 2010" (Doc. No. 31 at 24 (citing Doc. No. 10-2)). (*Id.* (citing *Reynolds v. Colvin*, 570 F. App'x 45, 46 (2d Cir. 2014)).) In finding that the "ALJ correctly evaluated the severity of [P]laintiff's mental impairment," Judge Pitman noted the ALJ's consideration of Plaintiff's testimony and other un-contradicted statements demonstrating that "he had no difficulties or limitations in performing activities of daily living, using public transportation to travel, shopping for essentials, handling bills and a savings account, participating in social activities, getting along with others, following instructions, completing tasks, paying attention and performing physical activities." (*Id.* at 25 (citing Doc. No. 10-6).)

As for the Dr. Meade form and the SSA staff member's statement, neither provides a basis for rejecting the ALJ's step-two finding – at most, they are merely in line with the ALJ's determination that Plaintiff had certain "medically determinable mental impairments"; they do not compel a finding that Plaintiff's impairments were "severe." *Cf. Brault*, 683 F.3d at 448 (a reviewing court may reject an ALJ's finding only if "a reasonable factfinder would *have to*

*conclude otherwise*").   Also unavailing are Plaintiff's objections that the ALJ erred at step two by relying on non-medical evidence and the "lack" of medical evidence.   As the ALJ explained, once a claimant is found to have a "medically determinable mental impairment" based on "medically acceptable [evidence]," then the ALJ "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's function," at which point it is proper – indeed, important – to consider non-medical evidence, including a claimant's own testimony about his capabilities.   (*See* Doc. No. 30-2 at 15.)   And as this explanation reflects, the ALJ was not confused as to the correct standard to apply at step two in determining whether Plaintiff's impairments were "severe."   (*See id.* at 12–18.)

In short, the Court finds that the Report was not clearly erroneous, and that even if the Court were to review the Report *de novo*, it would find that there was substantial evidence supporting the ALJ's step-two determination.   *See, e.g.*, *Reynolds*, 570 F. App'x at 46 (rejecting contention that the ALJ "erred at step two of the disability analysis," since the medical evidence on which plaintiff relied predated the relevant disability period and, "in the interim, claimant worked at substantial gainful activity, a circumstance making it difficult to infer severe impairment from the earlier records").

As for the second broad objection – regarding the ALJ's duty to more fully develop the record – Plaintiff argues that the ALJ failed to discharge this obligation by (a) not arranging for "consultative examinations" for Plaintiff and not adequately explaining to Plaintiff that "if he did not appear at consultative exams . . . he would . . . be denied benefits"; and (b) "failing to contact or subpoena" Plaintiff's past employers and his mother to ask them, respectively, about Plaintiff's "termination" and symptoms.   (Doc. No. 38 at 14.)   Here too, the Court finds that the Report was not clearly erroneous in recommending that the Court uphold the ALJ's findings.   (*See* Doc. No.

31 at 28–31.)  While the ALJ has an affirmative obligation to develop the administrative record, the ALJ's duty to do so is not without limit.  *See Davenport ex rel. D.W.P. v. Comm'r of Soc. Sec.*, No. 14-cv-2734 (WHP), 2015 WL 5577450, at *12 (S.D.N.Y. Sept. 22, 2015).  Here, the Report and the administrative record both clearly show that the ALJ made reasonable efforts and thus adequately discharged his duty to develop the record, including by repeatedly and meaningfully attempting to arrange for a consultative examination of Plaintiff and offering to adjourn the hearing in the interim.  (*See* Doc. No. 31 at 28–31; *see, e.g.*, Doc. No. 10-2.)  In addition, at the hearing, the ALJ specifically asked whether any medical evidence was missing from the record, to which Plaintiff responded that the ALJ had all of the available medical evidence – that is, just the 2006 hospitalization report.  (Doc. No. 10-2.)  The fact that the ALJ did not actually schedule a consultative examination is not a basis to set aside the Report or to remand the case where, as here, Plaintiff made it clear that such an effort would be futile, repeatedly stating at the hearing that he had "enough substantial evidence," and that he did not want an adjournment or a medical exam, "just . . . a favorable decision."  (*See* Doc. No. 30-2 at 26–28); *see, e.g.*, *Gillard v. Colvin*, No. 11–cv–1173 (GLS), 2013 WL 954909, at *2 (N.D.N.Y. Mar. 12, 2013) (finding no "obligat[ion] to further develop the record" by requesting "assessments from [plaintiff's] treating physicians" where plaintiff's counsel told the ALJ that "all medical records had been submitted" and asked the ALJ to "'close the file and render a decision'").

As for the ALJ's duty to develop the record with respect to non-medical evidence, the Court finds no merit in Plaintiff's argument that the ALJ should have contacted Plaintiff's past employers about his termination and his mother about his symptoms.  The Second Circuit has explained that ALJs are not required to "affirmatively seek out additional evidence" unless there are "'obvious gaps' in the record."  *Davenport ex rel. D.W.P.*, 2015 WL 5577450, at *12 (quoting *Eusepi v.*

*Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014)); *see also Puente v. Comm'r of Soc. Sec.*, No. 14-cv-4427 (GWG), 2015 WL 5474106, at *10 (S.D.N.Y. Sept. 18, 2015) ("[I]t is well established that where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." (citation omitted)).  Here, the ALJ properly inquired into Plaintiff's symptoms and work history at the hearing, received responsive answers from Plaintiff regarding each, and reviewed the relevant documents that Plaintiff submitted.  (*See* Doc. No. 10.)  Plaintiff's argument that more was required is unpersuasive, given that Plaintiff presented no evidence to suggest that there were any gaps in the record relevant to his disability claim, let alone that his former employers or mother possessed any information that would address any such gaps.  *See, e.g.*, *Bosmond v. Apfel*, No. 97-cv-4109 (RPP), 1998 WL 851508, at *9 (S.D.N.Y. Dec. 8, 1998) ("Plaintiff was asked about her limitations, and gave answers that conformed with the medical evidence, suggesting that she was sufficiently capable of walking, standing and sitting to perform sedentary work.  In light of this consistency, the ALJ satisfied his duty to develop the record.").  As a result, "[t]his is not a case where the ALJ disregarded plaintiff's testimony or medical evidence and simultaneously failed to inquire further into facts which could support plaintiff's contentions, nor is it a case where the ALJ's neglect in pursuing information led to 'gaps' in the record."  *Id.*  Furthermore, Plaintiff's challenges to the ALJ's development of the record improperly ignore the SSA's regulatory scheme, which imposes meaningful, specific responsibilities on *claimants* – who bear the burden of proof at step two – to gather evidence and develop the record.  *See, e.g.*, 20 C.F.R. § 416.912(c) (describing "your [*i.e.*, claimant's] responsibility" to provide evidence "showing that you have an impairment(s) and how severe it is during the time you say that you are disabled").  Accordingly, the Court finds that it was not clearly

erroneous for Judge Pitman to conclude that the ALJ's actions here satisfied his duty to develop the record.

There is, however, one "improper" objection that merits further discussion – specifically, Plaintiff's argument that the SSA Appeals Council erred by failing to incorporate into the record Plaintiff's "new evidence."   (*See* Doc. No. 38 at 29–30.)   Plaintiff essentially asserts that the Appeals Council had an obligation to accept and preserve the "new evidence" that he submitted months after the ALJ's decision, even if the Appeals Council did not consider it.   Although the Second Circuit has held that "new evidence" provided to the Appeals Council is to be incorporated into the administrative record, this holding only applies to such evidence that predates the ALJ's decision.   *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996); *see also Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002) ("[N]ew evidence submitted to the Appeals Council forms part of the administrative record under review, [but] only to the extent that it relates to the time frame encompassed in the ALJ's decision." (citation omitted)); 20 C.F.R. § 416.1476 ("If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.").   Here, Plaintiff's new evidence – which consists of three hospital records from May and July 2012 – clearly postdated the ALJ's January 27, 2012 decision.   (*See* Doc. No. 30-2 at 3.)   Thus, on its face, the failure to incorporate this evidence into the administrative record was not obviously in error.

Moreover, while it could be argued that the Appeals Council should have preserved the additional five pages, since the date of the materials is not necessarily dispositive as to whether that new evidence could be incorporated into the administrative record, the Court finds that the

9

specific circumstances here do not warrant remanding the case on this basis.  As relevant, before remanding a case based on "new evidence," a district court must first determine that the evidence is in fact "'new' and not merely cumulative of what is already in the record," and "material," that is, "both relevant to the claimant's condition during the time period for which benefits were denied," *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1998), and "reasonably likely to have altered the administrative decision" had the ALJ known about such evidence at the time, *Bosmond*, 1998 WL 851508, at *12 (citation omitted).  Plaintiff bears the burden of establishing that these factors are met.  *See Tirado*, 842 F.2d at 597.  Here, however, Plaintiff does not even allege, let alone demonstrate, that his "new evidence" was material.  In fact, nowhere does Plaintiff describe the nature or contents of the documents or explain how hospital records created months after the ALJ's decision could nevertheless be relevant to the period predating the ALJ's decision.  Similarly, while there was nothing barring Plaintiff from attaching the evidence to his briefs or otherwise arguing that the Court should independently consider this new evidence, *see, e.g.*, *Bosmond*, 1998 WL 851508, at *9, Plaintiff here did neither.  It is also curious that, in seeking relief from the Court, Plaintiff specifically requests that this case *not* be remanded pursuant to sentence 6 of 42 U.S.C. § 405(g) (Doc. No. 38 at 31–32), even though sentence 6 is the appropriate vehicle for remanding on the basis of "new evidence."  *See* 42 U.S.C. § 405(g) ("The court may . . . at any time order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.").  Consequently, the Court finds that Plaintiff has failed to show that his "new evidence" warrants remanding this case and concludes that the Report was not clearly erroneous in rejecting Plaintiff's arguments on this issue.

Finally, Plaintiff asserts one "proper" objection that is subject to *de novo* review. Specifically, Plaintiff challenges the Report's alternate holding that, even if the ALJ had "erred in ending the analysis at step two, this error was harmless because [P]laintiff would not have been able to meet his burden at step four" of the disability analysis.  (*See* Doc. No. 31 at 26–27.)  In essence, Plaintiff argues that it was "improper" for the Report to base its recommendation, "even in part," on this alternative ground, since the ALJ did not reach step four in denying Plaintiff's disability claim.  (*See* Doc. No. 38 at 2–3.)  The Court agrees.  *See Melville v. Apfel*, 198 F.3d 45, 51–52 (2d Cir. 1999) ("It is not the function of a reviewing court . . . to answer in the first instance the inquiries posed by the [Social Security Administration's] five-step analysis . . . [or to] affirm an administrative action on grounds different from those considered by the agency.").

This error, however, does not require remanding the case, since the Report clearly found and based its recommendation to uphold the administrative decision on the fact that the ALJ's step-two analysis was supported by substantial evidence (or lack thereof) and not based on an erroneous legal standard.  (*See* Doc. No. 31 at 22.)  This step-two finding – which, as discussed above, was not clearly erroneous – was sufficient to uphold the ALJ's decision given that the ALJ was not required to proceed past step two of the five-step analysis once he had properly determined that Plaintiff did not satisfy that step.  *See* 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."); *see also Swainbank v. Astrue*, 356 F. App'x 545, 547 (2d Cir. 2009) ("If an individual is found to be not disabled at any step, the Commissioner need not proceed to the next step.").  Therefore, in light of the fact that the ALJ's step-two analysis was dispositive with respect to Plaintiff's disability claim and the Report's recommendation to uphold the ALJ's decision on

this basis was not clearly erroneous, the Court rejects Plaintiff's objection and, except for its alternative finding, adopts the Report in its entirety.

### III. CONCLUSION

For the foregoing reasons, and those stated in the Report, IT IS HEREBY ORDERED THAT Defendant's motion for judgment on the pleadings is GRANTED and Plaintiff's cross-motion to remand is DENIED. The Clerk of the Court is respectfully directed to terminate the motions pending at docket entry numbers 27, 39, and 40, and to close this case.

SO ORDERED.

Dated:       September 30, 2015
             New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE